**RAYMARK INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 233–86T.

United States Claims Court.

Aug. 16, 1988.

James P. Parker, Washington, D.C., for plaintiff.

William K. Drew, Washington, D.C., with whom was Asst. Atty. Gen. William S. Rose, Jr., for defendant.

OPINION

REGINALD W. GIBSON, Judge:

INTRODUCTION

Plaintiff, Raymark Industries, Inc. (hereinafter plaintiff or Raymark), a Connecticut corporation engaged in the manufacture of truck parts, filed this federal excise tax refund suit against the United States (defendant herein) on April 8, 1986. Therein plaintiff seeks a refund of approximately $475,982.06 representing manufacturer's federal excise taxes (*i.e.,* floor stock refund

claim) that plaintiff alleges were erroneously and illegally retained by the defendant. Jurisdiction is premised in this court under 26 U.S.C. § 7422[1] and 28 U.S.C. § 1491(a)(1).

Subject action is presently before the court on the Motion of the United States To Dismiss the Complaint pursuant to RUSCC 12(b)(1) and 12(h)(3).[2] The issue before us is whether the plaintiff meets the jurisdictional prerequisite of 26 U.S.C. § 7422 of having "duly filed" the relevant claim for refund with the Internal Revenue Service (I.R.S. or Service).[3] That is to say, the court's specific focus is—whether in fact plaintiff *timely* filed its refund claim with the I.R.S., *i.e., before* October 1, 1983, as contemplated by the manufacturer's excise tax repeal provisions codified at 26 U.S.C. § 4061 notes (1988 Supp.), Pub.L. 97–424, Title V, § 522 and 26 U.S.C. § 7422.[4]

In that connection, the pleadings indicated to the court that explication of the timely filing issue required a hearing and the taking of testimony. This was so because the criticality of the answers demanded not only that they be made under oath in open court, but that the court have an opportunity to weigh and evaluate the credibility of all witnesses testifying on said issue.

Upon review of the evidence adduced during the July 27 and 29, 1988 evidentiary hearings, as to the date subject claim was actually filed, we are constrained to find that the plaintiff fails to meet its burden of proof relative thereto. In other words, creditable probative evidence was wanting as to the specific date the claim was *actually posted.* Accordingly, we dismiss this action for lack of subject matter jurisdiction, without addressing the other aforementioned jurisdictional issue raised by the defendant in its motion to dismiss.

## STATEMENT OF FACTS

Generally, in addressing a jurisdictional question, the court must accept plaintiff's (*i.e.,* the non-movant) undisputed allegations of fact as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746, 747 (Fed.Cir.1988). However, to the extent that *disputed* facts are decisive of the jurisdictional issue, *i.e.,* that there is a factual attack on jurisdiction, the court "is obliged to look beyond the pleadings and decide for itself those facts, even if in dispute, which are necessary for a determination of [the] jurisdictional merits." *See LaMear v. United States,* 9 Cl.Ct. 562, 568 n. 6, *aff'd,* 809 F.2d 789 (1986); *accord, Mark Smith Const. Co., Inc. v. United States,* 10 Cl.Ct. 540, 541 n. 1 (1986); *Fidelity & Deposit Co. of Maryland v. United States,* 2 Cl.Ct. 137, 145 (1983). In the instant case, the disputed factual issue, *i.e.,* the timeliness of the filed refund claim, is decisive of the jurisdiction-

---

1. 26 U.S.C. § 7422, Civil actions for refund, provides, in relevant part, as follows:

    (a) No suit prior to filing claim for refund. —No suit ... shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally ... collected ... or in any manner wrongfully collected, until a claim for refund ... has been duly filed with the Secretary, according to ... law ... and ... regulations....

2. By statute, this court lacks jurisdiction over a civil action for refund of taxes unless a claim has been filed with the Service within the applicable period of limitation. 26 U.S.C. § 6402; Treas.Reg. § 301.6402–2(c). Moreover, Rule 12(h)(3) of the United States Claims Court provides that, "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

3. During oral argument on defendant's motion to dismiss, the parties stated that the *timeliness* issue was not presently before the court. The defendant's motion to dismiss, therefore, was predicated on the theory that the "statement" required to be "submitted in support of the claim" was a jurisdictional prerequisite, under Temporary Excise Tax Regulations § 145.1–1(d)(2), and failing such, plaintiff omitted filing a "duly filed" return as required by 26 U.S.C. § 7422. Thus, the argument was that this court lacked RUSCC 12(b)(1) subject matter jurisdiction. However, inasmuch as we find the timeliness of the filed claim to be the critical threshold issue affecting the jurisdiction of this court, we *sua sponte* place that matter in issue.

4. The I.R.S. denied the plaintiff's claim for refund as untimely without reaching the merits thereof.

al issue postured *sua sponte* by the court. Accordingly, in addressing said issue, the court finds the following facts, *infra.*

Raymark manufactures and sells, *inter alia*, truck brake parts that were subject to an excise tax under the 1954 Internal Revenue Code, 26 U.S.C. § 4061(b). Effective January 7, 1983, I.R.C. § 4061(b) was repealed by the enactment of the Highway Revenue Act of 1982, 26 U.S.C. § 1 et seq., Pub.L. 97–424, 96 Stat. 2168. The relevant repeal provisions are codified at 26 U.S.C. § 4061 notes (1988 Supp.), Pub.L. 97–424, Title V, §§ 521–523, 96 Stat. 2184–2187. Under the repeal provisions, taxpayers could obtain refunds (*i.e.*, floor stock refunds) of taxes paid on items held in inventory by distributors and customers (dealers) as of January 7, 1983.

As of January 7, 1983, plaintiff's numerous distributors and customers were holding floor stock inventory covered by the refund provisions. Accordingly, said distributors and customers submitted to Raymark requests for refund of floor stock inventory taxes that previously had been paid by them. Plaintiff avers that the distributors and customers requested refunds totalling at least $475,982.06, and that the written requests were received by it *prior* to July 1, 1983.[5] Plaintiff either paid the requested refunds to its distributors/customers, or obtained written consent from the distributors and customers that it be permitted to seek from the Internal Revenue Service on their behalf such floor stock refunds that were allowable. This circumstance also permitted plaintiff to seek refunds from the Service on its behalf in instances where it had previously refunded the tax to its distributors.

Consequently, on September 30, 1983, plaintiff allegedly mailed to the I.R.S. in Andover, Massachusetts (hereinafter Andover), I.R.S. Form 843, its claim for refund of excise taxes totalling $475,982.06, imposed by the Service under § 4061(b) with respect to the aforementioned inventory. The envelope in which the claim was mailed was postmarked by *private meter* with a stamped date of Friday, "September 30, 1983." No United States Postal Service postmark appears anywhere on the envelope. Defendant's Exhibit 3. The foregoing claim for refund was in fact received by the Service on October 7, 1983, as evidenced by the I.R.S. date stamp placed on the backside of the envelope. Defendant's Ex. 3.[6] The I.R.S., based upon the October 7, 1983 receipt date, denied the claim as *untimely filed* without addressing the merits thereof.

## CONTENTIONS OF PARTIES

Because the jurisdictional question may be definitively resolved on the basis of our findings, with regard to whether the refund claim was *timely filed*, the contentions set forth below will only address that aspect of the parties' arguments.[7]

### 1. *Plaintiff*

Plaintiff contends that its floor stock refund claim, Form 843, which was mailed in a privately postmarked envelope that bore such privately postmarked date within the statutory period (*i.e.*, September 30, 1983), was received by the I.R.S. within the time frame that other first-class mail would *ordinarily* have been received. Treas.Reg. § 301.7502–1(c)(iii)(b). Specifically, plaintiff advances the position that its *privately* postmarked claim, allegedly mailed from Trumbull, Connecticut (hereinafter Trum-

---

5. Plaintiff admits that approximately $49,027.11 of the claimed refund amount represents requests received from distributors and customers *after* the July 1, 1983 deadline.

6. Upon receipt, mail is processed through a mail processing machine by the Internal Revenue Service in Andover. This machine stamps such mail, designating the date of actual physical receipt. During peak periods, when the mail received is too voluminous to be processed in one day, the mail is segregated and later processed through the mail processing machine

with a stamp date of the *actual date* received by the Service. Tr. 170–173.

7. Notwithstanding our disposition, the court notes that plaintiff presented a well reasoned argument with regard to its assertion that Treas. Reg. § 145.1–1 was *not* jurisdictional. In short, plaintiff avers that the requirements therein, with regard to submission of the "statement," was purely a procedural criterion in establishing the merits. However, we find it unnecessary to express an opinion on the point postured.

bull) on September 30, 1983, reached the I.R.S.'s Andover Center within the ordinary period that a first-class United States Postal Service postmarked letter would have reached such destination if mailed from Trumbull with proper postage. Thus, plaintiff maintains that its claim was timely filed pursuant to statutory and regulatory requirements, and that the court, therefore, has jurisdiction to entertain the instant complaint.

### 2. Defendant

Contrastingly, defendant asserts that in order to satisfy the statutory limitations requirement of § 522(a), plaintiff must prove by a preponderance of the evidence that its claim for refund was *actually* deposited in the United States mail *before* October 1, 1983. Moreover, defendant asserts that plaintiff must also prove that the claim so posted was actually received by the I.R.S. within the ordinary time frame that a first-class United States Postal Service postmarked letter, with proper postage, would have been received if mailed from plaintiff's place of origin in Trumbull on September 30, 1983, to defendant's place of destination in Andover. If the plaintiff's claim was not received within that "reasonable time frame" (and defendant contends that it was not), then the plaintiff must further demonstrate that the claim was delayed in the transmission of the mail and the cause of such delay.

### 3. Scope of the Court's Opinion

Against this background, the court will first address the burden of proof the plaintiff must meet in order to establish that its complaint is properly within our jurisdiction. Next, we will briefly outline the statutory basis for our authority to review plaintiff's refund claim. We will then set forth the statutory limitations placed upon the plaintiff which affect the contingency of this court's jurisdiction. Finally, after delineating the jurisdictional elements the plaintiff must satisfy, based upon the aforementioned statutory limitations, we will assess whether the plaintiff fulfills the statutory and regulatory requirements.

### ISSUE

Jurisdiction cannot be conferred by the parties upon the federal courts by consent or waiver thereof, for a court may not decide the merits of a case if it lacks jurisdiction over the subject matter. *See Knight v. United States,* 10 Cl.Ct. 685, 689 (1986), *citing, John C. Grimberg Co., Inc. v. United States,* 1 Cl.Ct. 253, 254 (1982), *aff'd,* 702 F.2d 1362 (Fed.Cir.1983). Hence, this court has a duty to consider, *sua sponte,* whether jurisdiction is properly invoked. RUSCC 12(h)(3); *see Arctic Corner, Inc v. United States,* 845 F.2d 999, 1000 (Fed.Cir.1988); *Fincke v. United States,* 230 Ct.Cl. 233, 247, 675 F.2d 289, 297 (1982). "The [timely] filing of a claim for refund with the I.R.S. is a jurisdictional requirement for a suit in federal court." 26 U.S.C. § 7422(a); *Buttke v. United States,* 13 Cl.Ct. 191, 192 (1987). To this degree, then, the dispositive issue in this case is—whether the plaintiff timely filed the subject Form 843 refund claim with the I.R.S. Inasmuch as we conclude herein that the plaintiff utterly fails to offer one scintilla of probative evidence supportive of a finding that the refund claim was duly filed with the I.R.S. *before* October 1, 1983, this action must be dismissed for lack of subject matter jurisdiction. RUSCC 12(b)(1).

### DISCUSSION

### 1. Burden of Proof

■ It is axiomatic that the party seeking to invoke federal court jurisdiction bears the burden of establishing that such exists. *See Miller v. United States,* 784 F.2d 728, 729 (6th Cir.1986) (per curiam); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977), *citing KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 Z.Ct. 197, 200, 81 L.Ed. 183 (1936). However, the determination of the appropriate quantum of the burden that the plaintiff must clear will rest upon such factors as the nature of the proceeding and the type of evidence the plaintiff is permitted to present. *Id.* Thus, the limits imposed by the trial judge upon pretrial proceedings will dictate the burden the plaintiff is required to meet. *Id.*

For example, if the court limits the parties' submissions, with regard to the jurisdictional issue, to merely affidavits or affidavits plus discovery materials, "these very limitations dictate that a plaintiff must make only a *prima facie* showing of jurisdictional facts through the submitted material in order to avoid a defendant's motion to dismiss." *Id.; see also A.B. Kyle v. Continental Capital Corp.*, 575 F.Supp. 616, 619–20 (D.Pa.1983). This is equitable because any greater burden "would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *Data Disc, Inc.*, 557 F.2d at 1285.

On the other hand, where, as in the instant case, the court exercises its discretion and takes evidence at a preliminary hearing in open court in order to resolve contested factual issues, the plaintiff must then be put to its full burden of proof. That is to say, "in [such] situation, ... plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as [it] would have to do at trial." *Data Disc, Inc.*, 557 F.2d at 1285, *citing to, McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). This court afforded plaintiff, in the case at bar, the opportunity to establish jurisdiction through a full evidentiary hearing on the issue of timely filing. Accordingly, in analyzing the documentary evidence and testimony adduced by the plaintiff during the evidentiary hearings conducted on July 27 and 29, 1988, we hold plaintiff to the burden of establishing that jurisdiction indeed exists, by a *preponderance* of the evidence.

### 2. *Jurisdiction Under 26 U.S.C. § 7422*

This court's threshold jurisdiction to review the merits of plaintiff's refund claim is circumscribed by 26 U.S.C. § 7422(a). *See* note 1, *supra*, for relevant portions thereof. *Trout v. United States*, 1 Cl.Ct. 219, 221 (1983). Consequently, it can be seen that "[a]n untimely claim for refund tax under Title 26, U.S.C. is not a 'duly filed' claim within the contemplation of the aforementioned section," and therefore, not within the jurisdiction of this court to review. *Trout*, 1 Cl.Ct. at 221. In this context, the word "duly" signifies that the document is, "in due or proper form"; and "filed" indicates that the document has been received, *i.e.*, "delivered ... to the proper officer or official for purposes of being kept on file by him as a matter of record and reference in the proper place." Black's Law Dictionary 450, 566 (5th ed. 1979); *accord, Buttke*, 13 Cl.Ct. at 192. Next, this court must continue its analysis by defining the jurisdictional limitations, if any, imposed upon the plaintiff under the Highway Revenue Act of 1982, § 522(a), with respect to the filing of a floor stock refund claim pursuant thereto.

#### a. Requirements under § 522(a)

As previously stated, § 522(a) permits the refund of certain excise taxes (floor stock refunds) paid by manufacturers, producers, or importers with respect to "any article on which a tax was imposed by section 4061(a) [or] 4061(b) ... as in effect on the day before the date of the enactment of [the] Act and which [would] not be subject to tax under section 4061(a) [or] 4061(b) ... as in effect on the day after the date of the enactment of [the] Act." 26 U.S.C. § 4061 notes (1988 Supp.), Pub.L. 97–424, 96 Stat. 2186–87. Specifically, the Act provides that a credit or refund shall flow (without interest) to the manufacturer, producer, or importer equal in amount to the tax paid by it if—

(A) claim for such credit or refund is *filed* with the Secretary of the Treasury or his delegate *before* October 1, 1983 based on a request submitted to the manufacturer, producer, or importer before July 1, 1983, by the dealer who held the article in respect of which the credit or refund is claimed, *and,*

(B) on or before October 1, 1983, reimbursement has been made to the dealer by the manufacturer, producer, or importer in an amount equal to the tax paid on the article *or* written consent has been obtained from the dealer to allowance of the credit or refund.

96 Stat. 2185, § 522(a)(1) (emphasis added). Thus, the foregoing statute denotes three

jurisdictional criteria that must be satisfied —(i) the claim must be filed *before* October 1, 1983; (ii) the claim must be premised on a request submitted to the manufacturer by the dealer before July 1, 1983; and (iii) on or before October 1, 1983, reimbursement has been made to the dealer by the manufacturer or written consent has been obtained from the dealer—before a duly filed return is established under § 7422. Said criteria are in the conjunctive, *i.e.*, all must be met, and if one is lacking, then this court is without jurisdiction. There is no issue as to the second and third criteria, and we find that they have been met. The problem here is that the evidence adduced at the evidentiary hearing, discussed *infra*, does not disclose that plaintiff's claim was filed *on or before September 30, 1983*, as it must.

Plaintiff asserts that it did in fact make such filing because it "mailed" its claim for refund to the Service Center located in Andover on September 30, 1983. Moreover, plaintiff ontends that such timely mailing is conclusively evidenced by the presence of the private postage meter stamp that appears on the front of the envelope in which the claim was mailed. Defendant's Ex. 3. Therefore, argues plaintiff, the "timely mailed-timely filed" rule codified at 26 U.S.C. § 7502 is probative of its assertion of timeliness.[8]

Section 7502 of the Internal Revenue Code was enacted as a remedial provision to alleviate inequities arising from differences in postal delivery from one part of the country to another. *See Miller*, 784 F.2d at 730; *Storelli v. Commissioner of Internal Revenue*, 86 T.C. 443, 447 (1986). The relevant sections provide that, if any claim required to be filed on or before a prescribed date under authority of any provision of internal revenue law is, after such date, *delivered* by United States mail to the agency or office with which such claim must be filed, the date of the United States postmark stamped on the cover shall be deemed to be the date of delivery. 26 U.S.C. § 7502(a)(1). However, the deemed mail date is applicable only if the postmark date falls within: (i) the prescribed period, or (ii) is on or before the prescribed date for the filing, *and* the claim, within the prescribed period, was *deposited* in the mail, in the United States, in an envelope, postage prepaid, and properly addressed to the agency with which the claim was to be filed. 26 U.S.C. § 7502(a)(2)(A) and (B).

The first obstacle encountered by the court in the instant matter is the fact that the envelope in which the subject refund claim was mailed contains *no United States Postal Service postmark*. Given this circumstance, then § 7502(a)(1), of course, is inapplicable to establish a deemed timely filing. On the other hand, as previously stated, the only evidence of the date of mailing the claim in issue is the *privately metered* postmark date affixed by an unknown employee of the plaintiff.

---

**8.** 26 U.S.C. § 7502 provides in relevant part:
§ 7502. Timely mailing treated as timely filing and paying
(a) General rule.—
(1) Date of delivery.—If any ... claim ... required to be filed ... within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency ... with which such ... claim ... is required to be filed, ... the date of the United States postmark stamped on the cover in which such ... claim ... is mailed shall be deemed to be the date of delivery....
(2) Mailing requirements.—This subsection shall apply only if—
(A) the postmark date falls within the prescribed period or on or before the prescribed date—

(i) for the filing (including any extension granted for such filing) of the ... claim ...

\* \* \* \* \* \*

(B) [and] the ... claim ... was within the time prescribed in subparagraph (A) deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency ... with which the ... claim ... is required to be filed....
(b) Postmarks.—This section shall apply in the case of postmarks *not made by the United States Postal Service* only if and to the extent provided by the regulations prescribed by the Secretary.
(emphasis added).

In this connection, the Secretary of the Treasury, pursuant to its delegated authority under 26 U.S.C. § 7502(b), has prescribed appropriate regulations setting forth the circumstances under which a *privately metered postmark* date will be deemed to constitute a timely filing pursuant to the "timely mailed-timely filed" rule. *See generally, Shipley v. Commissioner of Internal Revenue*, 572 F.2d 212, 213–14 (9th Cir.1977) (per curiam). "When the statute does allow the date of mailing to be shown by evidence other than tangible evidence of a mark made by the post office, the regulations [Treas.Reg. § 301.7502–1(c)(1)(iii)(b)],[9] require a showing by way of facts beyond the taxpayers control [that] independently corroborate the date of mailing." *Shipley*, 572 F.2d at 514.[10]

The regulations expressly provide that in a situation, such as the one currently before the court, where the postmark on the envelope is made by *other than* the United States Postal Service, *i.e.*, by a private person utilizing the postage meter: (1) the postmark must bear a date on or before the last date, or last day of the prescribed period for filing the document, and (2) the document must be received by the agency, or office with which it is required to be filed not later than: (a) the time when a document contained in an envelope which is properly addressed and mailed and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the United States Post Office on the last date; or (b) the last day of said prescribed period for filing. Treas. Reg. § 301.7502–1(c)(1)(iii)(b).[11] Relative to

---

9. Treas.Reg. § 301.7502–1 provides in relevant parts as follows:

§ 301.7502–1 Timely mailing treated as timely filing.

\* \* \* \* \* \*

(c) Mailing requirements. (1) Section 7502 is not applicable unless the document is mailed in accordance with the following requirements:

(i) The document must be contained in an envelope or other appropriate wrapper, properly addressed to the agency ... with which the document is required to be filed.

(ii) The document must be deposited within the prescribed time in the mail in the United States with sufficient postage prepaid. For this purpose, a document is deposited in the mail in the United States when it is deposited with the domestic mail service of the U.S. Post Office. The domestic mail service of the U.S. Post Office, as defined by the postal regulations, includes mail transmitted within, among, and between the United States, its Territories and possessions, and Army–Air Force (APO) and Navy (FPO) post offices (see 39 CFR 2.1)....

(iii)(a) ...

(b) If the postmark on the envelope or wrapper is made other than by the U.S. Post Office, (1) the postmark so made must bear a date on or before the last date, or the last day of the period, prescribed for filing the document, and (2) the document must be received by the agency ... with which it is required to be filed not later than the time when a document contained in an envelope or other appropriate wrapper which is properly addressed and mailed and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the U.S. Post Office on the last date, or the

last day of the period, prescribed for filing the document. However, in case the document is received after the time when a document so mailed and so postmarked by the U.S. Post Office would ordinarily be received, such document will be treated as having been received at the time when a document so mailed and so postmarked would ordinarily be received, *if* the person who is required to file the document establishes (i) that it was actually deposited in the mail before the last collection of the mail from the place of deposit which was postmarked (except for the metered mail) by the U.S. Post Office on or before the last date, or the last day of the period, prescribed for filing the document, (ii) that the delay in receiving the document was due to a delay in the transmission of the mail, and (iii) the cause of such delay.... (emphasis added).

10. In any event, under any reading of the regulations, it is incumbent upon the taxpayer to prove by a preponderance of the evidence, as a condition precedent to the application of the "timely mailed-timely filed" rule, that it, *in fact*, deposited the article in the United States mail. 26 U.S.C. § 7502(a)(2)(A) and (B).

11. However, in conjunction with the foregoing, if the mail is received after the time when a document mailed and postmarked by the United States Post Office would ordinarily have been received, the person so relying on said private postmark must establish: (a) that the document was actually deposited in the mail *before* the last collection of the mail on the last day for filing the item; (b) that the delay in receiving the document was due to a delay in the transmission of the mail; and finally (c) the cause of such delay. Treas.Reg. § 7502–1(c)(iii)(b).

the facts presently in dispute, plaintiff asserts that its claim was received within the ordinary period that a United States Postal Service postmarked first-class letter would have reached the Service in Andover during the relevant period in 1983. Because of this assertion, plaintiff did *not* offer proof designed to establish that there was a delay by the Postal Service in the transmission of subject refund, and the cause of such delay. Accordingly, this court's analysis will address only four elements of proof that the plaintiff must offer (*see* note 11, *supra*).

Summarizing, inasmuch as plaintiff's claim was received by the Service in Andover *after* the September 30, 1983 deadline for filing same, it must prove four elements under Treas.Reg. § 301.7502–1(c)(iii) (b) in order to satisfy the "timely mailed-timely filed" exception thereunder. Sharply stated , the plaintiff is compelled to offer proof, by a preponderance of the evidence, that: (1) the refund claim was deposited in the mail on September 30, 1983; (2) the proper postage was prepaid; (3) the envelope was properly addressed to the Service in Andover; *and* (4) the claim for refund was received in Andover during that ordinary period that first-class mail originating from Trumbull and bearing proper postage and a United States Postal Service postmark of September 30, 1983 would have been received in Andover.

b. Whether the Claim was Deposited in the Mail on September 30, 1983

■  In support of its assertion that the refund claim was placed in the mail *on* September 30, 1983, plaintiff offered the testimony of one of the two Raymark Industries' mail clerks (Vertucci) who would have been scheduled to work on that date; and the testimony of the Supervisor of the Raymark Industries Tax Department (Mohs), who prepared the floor stock refund claim that was allegedly mailed on September 30, 1983. Notwithstanding this testimony, for the reasons stated *infra*, we find that the plaintiff fails to establish by a preponderance of the evidence that its claim for refund was deposited in the mail

in Trumbull *on or before* September 30, 1983.

Vertucci testified that his duties as a Raymark Industries mail clerk required that he pick up, meter, and bundle outgoing mail, and that he place said mail in a canvass bag for pickup by a United States Postal Service courier. Tr. 20. Vertucci claimed to have routinely followed the procedures outlined above as part of his employment as a Raymark mail clerk. Tr. 20.

The court notes, however, that several vital points were not established by plaintiff through witness Vertucci. The plaintiff failed to establish (or even assert) that Vertucci worked on September 30, 1983, and the witness had no present recollection of that fact. Tr. 51. Therefore, the plaintiff could not possibly establish that the claim was "placed in the mail" by Vertucci on September 30, 1983, because the witness could not testify that he worked on that date. When specifically asked by the court, he answered—"No, I can't really say that I was [at work on September 30, 1983]."

Moreover, the plaintiff failed to establish that the witness saw *said refund claim* placed in the mail. Vertucci testified that: (a) he had no idea exactly what items were mailed from the Raymark mailroom; (b) he lacked any information as to the contents of the various envelopes that he placed in the mail bags; and (c) he did not know to what location such mail was ultimately destined. Tr. 53. Based upon this unequivocal testimony, we find that, even assuming *arguendo* that plaintiff had proven that Vertucci did work on September 30, 1983, the witness's testimony could not establish by the requisite quantum of proof that he, or anyone else, placed subject claim (Form 843) in the mail *on that date.* Tr. 30.

The plaintiff also failed to establish that Vertucci had *exclusive* control over the postage meter machine. Although Vertucci *at one point* claimed to have possession of the postage machine key, this testimony is of little significance. He *later* testified that the key to the postage meter was "in the machine" when he took the position in the mailroom, Tr. 51; that he did not keep

the key on his person at all times, Tr. 29–30 and 55–56; and that he did not know whether his key was the only key, Tr. 52 and 55–56. Against this background, the court concludes and finds that the plaintiff did not establish that the postage machine key was in the exclusive control of this witness. Finally, the court is troubled by other testimony, *infra*, elicited from this witness because such is damaging to the plaintiff's position.

For example, Vertucci testified that the mailroom was never locked, and also that the date on the postage machine would have remained set on Friday, September 30, 1983, *until* he changed it that following Monday, October 3, 1983. Tr. 29 and 54–55. Moreover, although Vertucci tied the use of the key to the *changing of the date* on the postage machine, he did not testify that the key was needed to *run mail through* the machine. In other words, the witness did not established that the practice in the Raymark mailroom was to lock the *postage function* of the machine. Arguably, the machine could have been locked with regard to the date function (obviating a change), but the *postage* function could have been left operable. In that event, someone could have come to the mailroom between 5:00 p.m. on Friday, September 30, 1983, and Vertucci's starting time on Monday, October 3, 1983, and "run" an envelope through the machine, thus generating an envelope with a postage date of September 30, 1983.

Based upon the foregoing analysis, we conclude and find that Vertucci's testimony is of *de minimis*, if any, probative value, with regard to the question whether the refund claim at issue was actually placed in the mail *on* September 30, 1983, and conse-

quently frustrates the burden plaintiff must satisfy.

The testimony of Mr. Mohs, Raymark's Tax Department supervisor, is similarly deficient with respect to the dispositive issue at hand, *i.e.*, the timely posting of the refund claim. Mr. Mohs testified that he prepared I.R.S. Form 843 on either September 29 or September 30, 1983. Tr. 335. On one of those dates, he gave his handwritten notes to his secretary to type. Tr. 336. She returned such to him on that (undeterminable) date, at which time he reviewed same and took it personally to the Treasurer of Raymark Industries for signature. Tr. 336.[12] However, Mohs could not remember whether he handed the claim to the Treasurer to sign or whether he gave it to the Treasurer's secretary. Tr. 336–37. Because the testimony failed to unequivocally establish either the date the Treasurer received the refund claim or even the date it was prepared, it is of little significance relative to the issue of the timely filing of such.

Moreover, considering the crucial facts that this witness could *not* remember, the court is convinced that the veracity of Mohs' testimony, *i.e.*, that he is *certain* that the claim was signed and on his desk on September 30, 1983, Tr. 338, is questionable, at best. Specifically, Mohs could not remember the day of the week the claim was mailed, Tr. 338; whether he spoke to the Treasurer after the claim was signed, Tr. 339; or how the claim came about being returned to his office, Tr. 339. Yet, Mohs "confidently" testified that he knew the signed claim was in his office on the *date* September 30, 1983. Again, such testimony does not convince the court relative to the issue at hand.

**12.** Also, Mohs testified that the Treasurer reviewed all documents before signing them, and that he (the Treasurer) would return documents unsigned for corrections if an error was found on the signature page, or if the form was undated. Tr. 276. However, this assertion is contradicted by the facts because plaintiff admitted the instant refund claim did contain a significant error on the signature page. As previously stated, *supra*, note 5, approximately $49,000 of the amount representing distributors' requests

for refund were untimely submitted to Raymark Industries. *See* note 5, *supra*. Therefore, if the Treasurer had reviewed the "signature page" for errors (whereon the inaccurate amount was located), it is conceivable that he would have uncovered the error (*i.e.*, the inaccuracy in the amount of refund requested), and directed Mohs to correct same. Such action did not occur. The inference is that Mohs' testimony that the Treasurer never signed an undated claim might, likewise, be unreliable.

Finally, notwithstanding *these* statements, other portions of Mohs' testimony can only be characterized as unpersuasive on the plaintiff's position. Mohs testified that, after reviewing the signed refund claim, he "gave it to [his] secretary to mail," Tr. 339, and that he "stuffed it in the envelope," Tr. 339. He then stated that he did not remember whether the envelope that would have contained the refund claim was attached to the materials he gave to his secretary to mail, inferring that he did not, in fact, "stuff" the claim into the envelope, Tr. 340.[13] Mohs never personally operated the meter machine, nor does he know who operated same on September 30, 1983. Tr. 278. He could testify neither that his secretary, in fact, delivered the relevant claim to the mailroom *on* September 30, 1983, nor that it was picked up by mailroom personnel *on* that date, because, after delivering such to his secretary, he had no further "involvement" with the claim. Tr. 341.

Reviewing *in toto* the testimony of Vertucci and Mohs on the issue of—whether the refund claim was placed in the mail *on September 30, 1983*, aside from the private stamped date on the envelope which we do not find to be *ipso facto* probative of the ultimate fact, the court is constrained to conclude that such testimony is totally void of one scintilla of persuasive proof that the event, in fact, occurred. Even though "proof" is arguably an ambiguous word, it is safe to conclude here that " 'proof' is the end result of conviction or persuasion produced by the evidence." C. McCormick, McCormick's Handbook of the Law of Evi-

dence § 336 (1972). At the outset, this plaintiff bore the onerous burden of proving, by a preponderance of the evidence, its assertion that the subject claim was "placed in the mail" on September 30, 1983. Such burden of proof necessitates the introduction of evidence that would lead the trier of facts to conclude, based thereon, that the facts to be proven are (a) almost certainly true; (b) highly probably true, or (c) probably true. *McCormick, supra, citing to,* McBaine, Burden of Proof: Degrees of Belief, 32 Calif.L.Rev. 242 (1944); *see also Burch v. Reading Co.,* 240 F.2d 574, 579 (3d Cir.), *cert. denied,* 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957). However, neither Vertucci nor Mohs contributed in any meaningful way to the introduction of such evidence. Thus, their testimony failed to convince or persuade this court by a preponderance of the evidence that the refund claim was placed in the mail *on September 30, 1983.*

Based on the foregoing, the court concludes that the plaintiff presented no relevant, probative testimony, or other evidence, tending to establish that the subject refund claim was in fact placed in the mail on September 30, 1983. Therefore, we hold that the plaintiff fails to meet its burden of proof by a preponderance of the evidence and, consequently, has failed to establish that the jurisdiction of this court is properly invoked. Accordingly, inasmuch as failure to establish the previously discussed element is fatal to the plaintiff's case, the court must conclude it lacks jurisdiction over the subject matter of this case.[14]

---

**13.** The foregoing testimony proffered by plaintiff unquestionably did not establish that any witness personally placed the claim in the mail *on* September 30, 1983. In fact, what the testimony did establish is that Mohs' secretary "may have," at some unascertainable point, placed the refund claim either in her tray to be picked up by one of the mail clerks, or that she deposited such in the mailroom for postage. However, her testimony was not offered in that she was not called as a witness. And, surprisingly, plaintiff did not explain its failure to call Mr. Mohs' secretary. Moreover, plaintiff admits that it did little, if anything, to secure such testimony. Tr. 377–380.

The absence of this testimony cannot and should not be ignored. *See Borror v. Herz,* 666

F.2d 569, 573 (C.C.P.A.1981). Basic evidentiary principles provide that an "unexplained failure to call any known non-hostile person who has direct knowledge of facts being developed by the party raises the inference that the testimony would be unfavorable, or at least would not support the case." *Borror,* 666 F.2d at 573–74, *citing to,* 2 Wigmore, Evidence, §§ 285, 286. The inference we draw from plaintiff's failure to procure such testimony is that the secretary's testimony would not have supported plaintiff's case.

**14.** Because plaintiff failed to meet its initial burden, the court will not elaborate on the specific rebuttal testimony offered by the defendant. However, we note that such was compel-

## c. Summary of Remaining Elements

Whereas plaintiff's failure to meet its threshold burden is fatal to this court's jurisdiction, the court need only superficially address the remaining elements.

Defendant's Exhibit 3 establishes that the postage was prepaid and that the envelope was properly addressed. Consequently, the only remaining element that plaintiff was required to establish by a preponderance of the evidence was that the refund claim was received during the ordinary period that first-class mail originating from Trumbull and bearing a United States Postal Service postmark would have been received in Andover. Treas.Reg. § 301.7502–1(c)(iii)(b).

As direct evidence in support of this proposition, plaintiff tendered either copies or originals of certified mail receipts sent from Raymark Industries in Trumbull to the I.R.S. in Andover. Plaintiff also presented the testimony of a Mr. Seagraves, a former Postal Service Information Officer and current publisher of "The Business Mailer's Review." Tr. 60.[15]

Addressing first, the "expert" testimony of Seagraves, the court concludes that such was substantially wanting with regard to the facts that were to be established. Seagraves was proffered as an expert witness on the United States Postal Service procedures, specifically with respect to the handling of mail from Trumbull to Andover. Tr. 73. Such testimony also covered certified mailing procedures. Tr. 77–82. However, the witness was a "public information/public relations" person, Tr. 64, who had never personally conducted any statistical analyses, Tr. 65, or scientific studies or surveys relative to Postal Service procedures. Tr. 69, 71. He had never

been to Trumbull, or Andover, and he never performed work for anyone in those locations that might remotely have lent credibility to his testimony or probativeness to the issue pursued. Tr. 74. In sum, said witness had performed absolutely *no* work (*i.e.*, studies, etc.) relative to the movement of mail from Trumbull to Andover.

Turning to the "certified receipts," and connecting such to the testimony of Seagraves, we likewise conclude that their use as "evidence" of the "ordinary delivery time" from Trumbull to Andover lacked probative value. These documents ostensibly were offered to establish that the delivery time from Trumbull to Andover was approximately six to eight days. Plaintiff had previously presented testimony that Raymark employees filled in the mailing date on the certified receipt and either tore the receipt off for safekeeping, or forwarded the receipt to the mailroom for dating, at which time they were torn off by a Raymark mail clerk. Tr. 22. None of these receipts were tendered directly to the United States Post Office for certification, *i.e.*, dating.

Witness Seagraves, in response to the question, "Suppose I put a piece of certified mail in a *mailbox* ...," responded, "Well, you wouldn't do that because the post office *has to accept your certified mail, so you would go to a post office, or a postal facility to have a record that you have in fact mailed that piece of mail;* and they would give you a receipt or a stub that would show that you had in fact tendered that piece of mail." Tr. 77–78. *"[I]t wouldn't be certified mail if the sender didn't have a receipt* [stamped by the

---

ling, particularly that which established that Mohs admitted that "he may have filed the claim on October 1, 1983." Tr. 123, 157.

To the extent that plaintiff attempted (by insinuation and innuendo) to discredit the testimony of one government witness with regard to Mohs' statement, we conclude that the evidence presented did not constitute "irrefragable proof" sufficient to overcome "the presumption that [this] government employee ... acted conscientiously in the performance of [his] duties." *See Space Age Engineering, Inc. v. United States,*

4 Cl.Ct. 739, 744 (1984), *citing Torncello v. United States,* 231 Ct.Cl. 20, 45, 681 F.2d 756, 770 (1982), *and Kavlar Corp., Inc. v. United States,* 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–02 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977).

**15.** "The Business Mailer's Review" is a bimonthly publication that reports upon "Postal Service activities that affect [its] readers." Tr. 61.

United States Postal Service]," Seagraves testified. Tr. 78 (emphasis added).

Thus, the exhibits that plaintiff tendered as certified mail receipts in order to show the reasonable travel time from Trumbull to Andover, in fact, raise a question as to whether they represent *properly certified mail.* Accordingly, we hold that said receipts were of miniscule probative value in establishing whether its refund claim arrived within the ordinary period United States Postal Service postmarked mail (or certified mail) would have arrived, even if the plaintiff had proven that it actually deposited the refund claim in the mail on September 30, 1983.

CONCLUSION

Given the foregoing jurisdictional defect, we find that plaintiff has failed to prove that the refund claim asserted herein is within the power of this court to review. Accordingly, we dismiss the complaint for lack of subject matter jurisdiction. The Clerk shall enter judgment accordingly. Costs shall be assessed against the plaintiff.

IT IS SO ORDERED.