**Leon R. LEVITSKY and Carol Levitsky, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 487–88T.**

United States Court of Federal Claims.

Dec. 3, 1992.

John A. Pomeroy, Washington, D.C., Attorney of Record for plaintiffs. Robin H. Sangston and Dow, Lohnes & Albertson, of counsel.

Jennifer Dover Spriggs, Washington, D.C., with whom was Acting Asst. Atty. Gen. James A. Bruton, for defendant. Mildred L. Seidman and William K. Drew, of counsel.

## OPINION

FUTEY, Judge.

This tax refund case is before the court on defendant's motion to dismiss or for summary judgment. Defendant contends that this court lacks jurisdiction to hear plaintiffs' complaint because the grounds for the refund suit are at variance with those set forth in plaintiffs' claim for refund filed with the Internal Revenue Service (I.R.S.). Plaintiffs counter that their 1980 tax return adequately sets out the grounds for refund. Alternatively, plaintiffs urge that the knowledge acquired by the I.R.S. during an audit of plaintiffs' 1980 taxable year adequately apprised the I.R.S. of the grounds for their claim for refund.

## FACTUAL BACKGROUND

Plaintiffs, Dr. Leon and Carol Levitsky, timely filed their 1980 Federal Tax Return, asserting a refund of $166,520.00, on October 15, 1981, after being granted two extensions by the I.R.S. Plaintiffs' Certificate of Assessments shows total payments for 1980 in the amount of $110,317.00 and a tax assessment of $39,367.00.[1] On December 28, 1981, plaintiffs were credited a refund of the difference, plus $5,714.88 in interest for a total of $76,664.88 for 1980. Plaintiffs allege that the audit of their 1980 tax return was begun in April 1982. By notice dated May 8, 1986, the I.R.S. disallowed an investment tax credit of $22,110.00 stemming from Dr. Levitsky's investment in the Professional Leasing Associates III partnership (PLA III). In addition, the I.R.S. disallowed an ordinary loss deduction of $34,299.00 for Dr. Levitsky's interest in the Gainesville Associates partnership (GA). Plaintiffs did not acquiesce in the disallowances; therefore, the investment tax credit and the ordinary loss deduction were "unagreed items" at the close of the audit.[2] On May 1, 1987, plaintiffs filed an amended income tax return for the 1980 taxable year.[3] On December 17, 1986, plaintiffs filed a claim for the 1980 taxable year with the Tax Court. On July 28, 1988, plaintiffs amended the Tax Court claim to delete that portion of the claim relating to 1980. Plaintiffs filed a claim in the United States Claims Court[4] on August 18, 1988, asserting a refund of $36,988.00, plus inter-

---

1. Plaintiffs allege that they made an additional payment of $95,570.00, for a total payment of $205,887.00. Nonetheless, this payment does not appear on the Certificate of Assessments. A Certificate of Assessment is *prima facie* evidence that plaintiff is liable for the balance shown. *Adams v. United States,* 175 Ct.Cl. 288, 301–02, 358 F.2d 986 (1966); *see also Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991).

2. Due to adjustments to other items on plaintiffs' 1980 tax return, the disallowance of these partnership items did not result in an assessment. In fact, plaintiffs ultimately were noti-

fied, in October 1986, that they were entitled to an additional refund of $6,303.00 for 1980.

3. Plaintiffs allege that the Internal Revenue Service (I.R.S.) has not acted on that claim for refund.

4. The United States Claims Court was redesignated the United States Court of Federal Claims effective October 29, 1992, pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992).

est, costs and attorney's fees for the 1980 taxable year.

## DISCUSSION

■ The appropriate quantum of burden placed upon the plaintiff in a jurisdictional challenge depends upon "the nature of the proceeding and the type of evidence the plaintiff is permitted to present." *Raymark Indus., Inc. v. United States,* 15 Cl.Ct. 334, 338 (1988). The court in *Raymark* noted—

> [A] plaintiff must make only a *prima facie* showing of jurisdictional facts through the submitted material in order to avoid a defendant's motion to dismiss ... any greater burden "would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials."

*Id.* at 338 (*citing Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977)). The court, moreover, has "broad discretion as to the method" used to resolve a factual dispute in a jurisdictional motion, and need not rely solely on undisputed facts. *Fidelity and Deposit Co. of Md. v. United States,* 2 Cl.Ct. 137, 145 (1983) (citation omitted). The court should "look beyond the pleadings and decide for itself those facts, even if in dispute, which are necessary for a determination of [the] jurisdictional merits." *Raymark,* 15 Cl.Ct. at 335, *citing LaMear v. United States,* 9 Cl.Ct. 562, 568 n. 6 (1986), *aff'd,* 809 F.2d 789 (Fed.Cir.1986). Thus, this court must decide whether plaintiffs can make a *prima facie* case in support of jurisdiction. Plaintiffs must establish first, that a claim for refund was asserted in the appropriate form, and second, whether the I.R.S. was fairly apprised of the grounds underlying the request for refund.

## A. EFFECT OF PETITION TO TAX COURT

■ The threshold issue before this court is whether I.R.C. § 6512[5] deprives this court of jurisdiction. This court's general grant of jurisdiction over tax refund cases lies in 28 U.S.C. § 1346 which states, in relevant part—

> (a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court of:
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

28 U.S.C. § 1346(a)(1) (1988). However, I.R.C. § 6512 provides:

> If the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) ... and if the taxpayer files a petition with the Tax Court within the time prescribed in 6213(a) ... no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court....

*Schiff v. United States,* 24 Cl.Ct. 249, 253 (1991) notes that—

> The mandate of this statute is crystal clear, leaving little need for any lengthy discussion. It unequivocally establishes that the Tax Court has exclusive jurisdiction once the taxpayer elects to file a petition for deficiency redetermination for a particular tax year.

Thus, if a claim is pending in the Tax Court, this court is divested of jurisdiction over any claim for that same year, regardless of whether the specific issue confronting the Court of Federal Claims is also being considered by the Tax Court. *Schrader v. United States,* 215 Ct.Cl. 1036, 1037, 578 F.2d 1388 (1978); *National Metro. Bank of Washington v. United States,* 170 Ct.Cl. 617, 625, 345 F.2d 823 (1965).

Significantly, however, the statute begins: "[i]f the Secretary has mailed to the taxpayer a notice of deficiency under sec-

---

**5.** The years in issue predate the 1986 tax code; accordingly, tax code references for the substantive issues are to the Internal Revenue Code (I.R.C.) of 1954. Because plaintiffs filed this claim after the Tax Reform Act of 1986, however, the procedural aspects of this case refer to the I.R.C. of 1986.

tion 6212(a)...." I.R.C. § 6212(a) provides: "[i]f the Secretary determines that there is a deficiency in respect of any tax imposed ... he is authorized to send notice of such deficiency to the taxpayer...." In the instant case, there has *never* been a deficiency for plaintiffs' 1980 taxable year. Even after audit, plaintiffs were entitled to a refund. The dispute in this case has always centered on the amount of refund due, not whether more taxes were due. The plain language of the statute indicates that it applies in situations where there is a deficiency in tax owed. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), ("[O]ur starting point must be the language employed by Congress.") This interpretation is supported by Treasury Regulation (Treas.Reg.) § 301.6512–1 which states: "If a person *having a right to file* a petition with the Tax Court with respect to a *deficiency* ... has filed such petition ... no suit in any court ... shall be instituted by the taxpayer." [Emphasis added.] Because plaintiffs never had a deficiency in tax owed, they never had a right to file in the Tax Court. Accordingly, I.R.C. § 6512 does not apply to this case and does not act to bar the exercise of this court's jurisdiction.

## B. SUBSTANTIAL VARIANCE OF THE REFUND CLAIM

■ Defendant maintains that this court does not have jurisdiction to hear this matter because plaintiffs' claim for refund was defective. First, defendant challenges the form of plaintiffs' refund claim. Second, defendant contends that even if plaintiffs submitted the correct claim, the grounds underlying the claim for refund were not stated in the claim submitted to the I.R.S. I.R.C. § 7422(a) states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax ... until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Therefore, a claim for refund that notifies the I.R.S. of the grounds for a claim is a prerequisite to suit in the Court of Federal Claims. *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 270, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931).

### (1) *Correct Refund Form*

■ The regulations under I.R.C. § 7422 provide both for the form that constitutes a formal claim for refund, and for the specificity of that claim. Treas.Reg. §§ 301.-6402–2(b) and 301.6402–3. Treasury regulations are given considerable interpretive deference and the weight given to a regulation is dependent—

> [U]pon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). In the area of federal taxation, the Supreme Court "has long recognized the primary authority of the IRS and its predecessors in construing the Internal Revenue Code." *Bob Jones Univ. v. United States*, 461 U.S. 574, 596, 103 S.Ct. 2017, 2030, 76 L.Ed.2d 157 (1983). Thus, the regulations promulgated under I.R.C. § 7422 are given great weight in the interpretation of that statute.

■ The question before the court, then, is whether plaintiffs filed the appropriate form under the regulations. Treas.Reg. § 301.6402–3(a)(5) provides:

> A properly executed individual ... *original income tax return ... shall constitute a claim for refund or credit* within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return ... if it contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer.... [Emphasis added.]

The purpose of this regulation is to simplify the refund procedure in situations where the tax paid exceeds the individuals' liability. *Fearis v. Commissioner*, 548 F.Supp. 408, 410 (N.D.Tex.1982). Thus, rather than

file a separate claim for refund, a taxpayer may use his tax return as the refund claim. Moreover, based upon this regulation, this court has found that an original income tax return constitutes the proper *form* for a claim for refund. *McIlvaine v. United States,* 23 Cl.Ct. 439, 442 (1991). Plaintiffs' return does state the amount of overpayment to be refunded. Therefore, pursuant to the treasury regulations, plaintiffs have submitted the correct form for a claim for refund.

### (2) *Specificity of the Claim*

■ The court now must decide whether the original return acting as a claim for refund states with specificity the grounds for the present tax issues. It is important to note that—

> In the administration of Internal Revenue Laws, we are concerned with substance and not form. The prerequisite refunding statutes requiring claim for refund before suit, should receive a practical construction to effectuate their purpose.

*Kales v. United States,* 115 F.2d 497, 500 (6th Cir.1940). Treas.Reg. § 301.6402–2(b)(1) requires—

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Thus, "[a]ny ground for refund not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Burlington Northern Inc. v. United States,* 231 Ct.Cl. 222, 225, 684 F.2d 866 (1982). The specificity required of claims for refund stems from a concern that the Commissioner of the I.R.S. should be given "adequate notice ... of the nature of the claim, and its underlying facts, so that a thorough administrative investigation and determination can be made and thereby prevent undue surprise." *Id.* (*citing United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 71, 53 S.Ct. 278,

281, 77 L.Ed. 619 (1933)). Moreover, a detailed claim ensures that—

> [T]he Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.

*Ottawa Silica Co. v. United States,* 699 F.2d 1124, 1138 (Fed.Cir.1983) (*quoting Union Pacific R.R. v. United States,* 182 Ct. Cl. 103, 109, 389 F.2d 437 (1968)).

■ Defendant contends that under *United States v. Richards,* 79 F.2d 797, 799 (6th Cir.1935):

> [W]here a timely general claim is filed, and a subsequent specific claim follows, before rejection, for a refund of the same taxes, the latter is an amendment to the former, and the two become "but a claim single and indivisible, the new indissolubly welded into the structure of the old". [Citation omitted.]

Plaintiffs' amended return was filed expressly to "claim the agreed upon changes pertaining to that Year," and the issues in this case were "unagreed issues." Defendant maintains that the amended return acts to correct the earlier return. Thus, defendant urges that the new claim, formed from the two old claims, does not include the grounds underlying the claim before this court. Yet, it is an equally cogent argument that when the two claims bond, they become one claim that includes *both* agreed and unagreed changes. Moreover, the amended claim does not specifically disavow the earlier claims. Accordingly, the later amended claim does not act to delete the issues presented in plaintiffs' initial return.

■ Assuming *arguendo,* that the two claims do include both agreed and unagreed issues, defendant further argues that the claim still lacks the requisite specificity for a valid claim for refund. The Court of Claims, however, has recognized an informal claim doctrine:

> If the claim for refund states only general grounds for relief, an item raised in litigation but not specifically adverted

to in the claim *might be permitted* if it is found that the taxpayer *adequately alerted the Service* to the fact that the item is a ground for refund, or that the Commissioner considered that unspecified ground in reaching his decision on the items for which a refund was requested.

*Union Pacific*, 182 Ct.Cl. at 109, 389 F.2d 437. [Emphasis added.] Therefore, if the I.R.S. *does* consider the specific grounds even though the claim does not provide them, then the need for a specific claim is obviated since the I.R.S. cannot claim surprise, or that it did not have the chance to pass on the issue in the administrative review. The I.R.S., however, must have clearly considered the grounds not raised in the claim:

> It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made.

*Union Pacific*, 182 Ct.Cl. at 113, 389 F.2d 437, *citing Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1945). Hence, if plaintiffs can prove that the I.R.S. knew of the facts underlying the claim and understood that a claim was being made based upon them, then plaintiffs will have proven that there was a valid informal claim.

 Informal claims have been recognized so long as they have a written component[6] and adequately apprise the I.R.S. of the grounds for the claim. *American Radiator & Standard San. Corp. v. United States*, 162 Ct.Cl. 106, 113, 318 F.2d 915, 920 (1963); *Wall Indus. Inc. v. United States*, 10 Cl.Ct. 82, 98 (1986). The inquiry into whether the I.R.S. has received appropriate notice of the grounds underlying a claim goes "beyond the four corners of plaintiff's tax return. Other written communications to I.R.S. can also supply adequate notice to support litigation under § 7422." *Davis v. United States*, 21 Cl.Ct. 84, 86 (1990). Thus, in appraising the sufficiency of the PLA III and GA claims, this court must look beyond the claim itself to other communications between the I.R.S. and plaintiffs.

PLA III is a general partnership formed to acquire and lease radiological equipment. Plaintiffs have claimed an investment tax credit for their acquisition of this equipment. In order for plaintiffs to adequately apprise the I.R.S. of the grounds underpinning their claim for PLA III, they must prove the elements set forth in I.R.C. § 46(e)(3)(B). This section allows credits where:

> [T]he term of the lease ... is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions ... exceeds 15 percent of the rental income produced by such property.

Thus, the taxpayer must prove first, that the leases were for less than 50 percent of the property's useful life. Therefore, plaintiffs must show the length of the term of the lease compared to the length of the useful life of the equipment. Secondly, plaintiffs must show that in the first 12 months after purchase that the sum of deductions allowed under I.R.C. § 162 for a trade or business expense, exceeds 15 percent of the rental income produced by the property. Plaintiffs maintain that on their return the line, "property qualified for investment credit, life years 7 or more—new" fulfills the function of notifying the I.R.S. of the grounds for their claim. Nonetheless, it does not show the length of the lease or that the deductions exceed 15 percent of the rental income. Thus, the tax return alone does not satisfy the specificity

---

**6.** Plaintiffs' return satisfies this component of the test. The United States Court of Claims has sustained informal claim theories based upon an objection on the back of a check, written protests prior to payment, and a letter of transmittal accompanying a waiver of restrictions on assessment. *American Radiator & Standard San. Corp. v. United States*, 162 Ct.Cl. 106, 114, 318 F.2d 915 (1963). [Citations omitted.]

requirement of Treas.Reg. § 301.6402–2(b) in respect to the PLA III deductions.

In the alternative, plaintiffs argue that the audit provided the I.R.S. with all the relevant information on the claim. In *American Radiator*, the court found that the agent's knowledge gained in auditing the taxpayer's returns sufficed to inform the I.R.S. of the grounds underlying the claim.[7] 162 Ct.Cl. at 115, 318 F.2d 915; *see also Wall* 10 Cl.Ct. at 100. In support of their argument that the I.R.S. was fully apprised of the grounds of their claim, plaintiffs point to the examiner's report prepared for PLA III.[8] The detailed information provided in the report reflects that the I.R.S. was aware of who leased the equipment, the length, and the amount of the lease. The I.R.S. admits in the report that it received cancelled checks for the expenses of the partnership. The examination explained in detail the law applicable to the facts of the case. The I.R.S. knew the length of the lease, the length of the useful life, the amount of expenses and the rental income. It is clear, then, that the I.R.S. had all pertinent information in its hands, knew that there was a claim based upon it, and considered the information in reaching the conclusion that the investment tax credit should be disallowed.

### (3) *GA partnership*

█ In addition, plaintiffs have claimed a deduction in regard to Dr. Levitsky's investment in the GA Partnership. GA was formed to acquire, own and manage improved real property. Plaintiffs claimed deductions for ordinary and necessary business expenses in connection with GA. The I.R.S. disallowed these deductions based upon a finding that the partnership activity was not engaged in for profit. Under I.R.C. § 183(c) "the term 'activity not engaged in for profit' means any activity

other than one with respect to which deductions are allowable for the taxable year under section 162(a) or under paragraph (1) or (2) of section 212." Thus, in order to sustain an ordinary business expense deduction, plaintiffs' deductions must be one of the listed deductions; if not, then the deductions are not considered to be in connection with an activity engaged in for profit. I.R.C. § 162 allows deductions for:

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

(2) traveling expenses ... while away from home in the pursuit of a trade or business; and

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not take or is not taking title or in which he has no equity.

In addition I.R.C. § 212 provides:

[T]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income....

Plaintiffs maintain that on their tax return the phrases "partnership income" and "net other partnership income" adequately inform the I.R.S. of the basis for the grounds of their claimed deduction under these sections. Clearly they do not. No indication is made of what type of expense the deduction reflects. On the basis of the information stated on plaintiffs' return, no determination could be made as to whether the deductions fall into the listed categories. Plaintiffs contend, however, that the I.R.S. was sufficiently notified of the grounds underlying the claim through the audit.

---

7. Defendant cites *Beckwith Realty, Inc. v. United States*, 896 F.2d 860 (4th Cir.1990), for the proposition that the agent's report from an audit provided insufficient notice to the I.R.S. for the purposes of taxpayer's claim. *Beckwith* is distinguishable, nonetheless, from the instant case in that the taxpayer, in *Beckwith*, refused to provide information to the auditing agent claiming an alleged need to protect business secrets.

The court in *Beckwith* noted that "[i]t is well settled that the informal claim doctrine may not be relied upon by those who refuse to provide information during the administrative process that is essential for resolution of the dispute." *Id.* at 864.

8. See plaintiff's Appendix Exhibit (ex.) 3.

The I.R.S. audited the partnership returns for GA and plaintiffs' income tax returns for 1979 and 1980. Plaintiffs allege that the auditor requested and received documentation of the claims. For the GA partnership, the I.R.S. wrote a report that analyzes GA for the *1981* taxable year. This report questions the purchase and leaseback of two shopping centers by GA. The report inquires into whether the critical indicia of ownership remained with the seller after the purchase. It discusses at length the terms of the agreement between GA and another partnership regarding the property and the sale/leaseback arrangement. Importantly, the report discusses the allocation of expenses in GA's management arrangement. It concludes, *inter alia,* that the benefits and burdens of ownership remained with the seller of the property and that the transfer of title was a sham. The I.R.S. found that GA is not an activity engaged in for profit. It is apparent that the service had fully considered all relevant information concerning the expenses leading to the claimed deductions. Although the report is for 1981, rather than for 1980, a 1980 report transmittal states:

> Gainesville Partnership was examined for 81. The T/P claimed a loss 80 12.[9] This loss was disallowed in full for 1980 without an examination. *The reason for the disallowance was the same as for 81 12.* That this partnership is not an activity engaged in for profit. [Emphasis added.]

Although the I.R.S. analyzed 1981 specifically, the I.R.S. applied the same reasoning to the 1980 taxable year in order to disallow the deduction.[10]

## CONCLUSION

Plaintiffs submitted the correct form for a claim for refund. In addition, the I.R.S. was adequately apprised of the grounds underlying plaintiffs' claim for refund. Therefore, plaintiffs have fulfilled the requirements for an informal claim. Accordingly, defendant's motion to dismiss or for summary judgment is denied.[11] The parties are directed to file a joint status report concerning further proceedings by December 30, 1992.

---

9. The I.R.S. designates the taxable year 1980 ending in December as 80 12.

10. Defendant also contends that the I.R.S. initially refunded all amounts requested in the original tax return, except for the alleged $95,570.00 payment, which is not at issue in the present case. Therefore, defendant maintains that plaintiffs have received all taxes originally claimed by them for 1980. Nonetheless, the relevant inquiry for this court concerns whether the I.R.S. knew *after* the 1980 audit disallowed the tax items that plaintiffs were asserting a claim based on those items. Therefore, the fact that the partnership items were initially allowed does not affect plaintiffs' assertion of a valid informal claim *after* the audit disallowed the deductions.

11. Defendant maintains that, in the event this court determines that this motion should be considered pursuant to RUSCC 12(b)(4) for failure to state a claim, then because of defendant's reliance on matters outside the pleadings, this motion should be treated as a motion for summary judgment. Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RUSCC 56; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Since the underlying merits of this case have not been briefed, and the sole issue for resolution, at this juncture, is jurisdiction, this case is more appropriately resolved as a motion to dismiss for lack of subject matter jurisdiction, rather than as a motion for summary judgment for failure to state a claim. *See Wall Indus. v. United States,* 10 Cl.Ct. 82, 86 n. 5 (1986).